```
 1                    UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF TEXAS
 2                         SAN ANTONIO DIVISION

 3   UNITED STATES OF AMERICA,   )
                                 )
 4        v.                     )   Docket No. 5:19-CR-106(1)-DAE
                                 )
 5   BENJAMIN BOGARD,            )   San Antonio, Texas
                                 )   February 7, 2019
 6        Defendant.             )   3:32 p.m. to 3:59 p.m.
     _____)
 7
                     TRANSCRIPT OF DETENTION HEARING
 8              BEFORE THE HONORABLE HENRY J. BEMPORAD
                    UNITED STATES MAGISTRATE JUDGE
 9
     A P P E A R A N C E S:
10
     FOR THE GOVERNMENT:
11       UNITED STATES ATTORNEY'S OFFICE
         By:  Tracy Thompson, Esquire
12       601 N.W. Loop 410, Suite 600
         San Antonio, TX  78216
13
     FOR THE DEFENDANT:
14       MORRIS & BERMUDEZ, PLLC
         By:  Michael J. Morris, Esquire
15       299 W. San Antonio Street
         New Braunfels, TX  78130
16
     COURT RECORDER:  FTR Gold
17
     TRANSCRIBER:
18       CHRIS POAGE, CRR, RMR
         United States Court Reporter
19       655 East Cesar E. Chavez Blvd., Suite G-65
         San Antonio, TX  78206
20       Telephone:  (210) 244-5036
         chris_poage@txwd.uscourts.gov
21
     Proceedings reported by electronic sound recording.  Transcript
22   produced by computer-aided transcription.

23

24

25
```

1    (Open court at 3:32 p.m.)
2         THE COURT: Good afternoon. Please be seated.
3    Calling the case of SA:19-MJ-131. And that's United States
4    of America versus Benjamin Bogard.
5    If I could have announcement of counsel, please.
6         MS. THOMPSON: Good afternoon, Your Honor. Tracy
7    Thompson appearing on behalf of the United States.
8         THE COURT: Good afternoon.
9         MR. MORRIS: Good afternoon, Your Honor. Mike Morris
10   on behalf of Mr. Bogard.
11        THE COURT: All right. Good afternoon again,
12   Mr. Morris.
13   We're set for preliminary and detention hearings at this
14   time; is that correct?
15        MR. MORRIS: We are ready to waive preliminary, Your
16   Honor.
17        THE COURT: All right. And just turn to the question
18   of detention?
19        MR. MORRIS: Yes, Your Honor.
20        THE COURT: All right. Very well. I don't know if
21   you have that form, but my staff will provide you one.
22        MR. MORRIS: Very good, Your Honor.
23        THE COURT: All right. Turning to the question of
24   detention in the case, let me ask if I can see counsel up here
25   for a moment, please.

```
```

1       MR. MORRIS:  Yes, Your Honor.
2       (At the bench)
3       THE COURT:  I don't see pretrial here so -- but I
4  talked to Andy about it, and he reported to me that he's
5  concerned that the gentleman has an undiagnosed mental
6  condition.  I have the right to know what the diagnosis of the
7  mental condition is before I can -- before we proceed.  I don't
8  know what y'all's views is, or maybe you know about this,
9  Mr. Morris --
10      MR. MORRIS:  We do.
11      THE COURT:  -- more than I do.
12      MR. MORRIS:  So we did some work.  And so our
13 proposal -- Laurel Ridge, a private treatment facility here in
14 Bexar County, up on 1604 --
15      THE COURT:  Yeah, I know --
16      MR. MORRIS:  -- because his dad is retired military
17 and qualifies for Tri-Care, they are entitled to full coverage
18 at Laurel Ridge except for this initial five-day lockdown
19 period.
20     So what we propose is, as a condition of his release on
21 bond, he would be committing to a voluntary period of five-day
22 lockdown at Laurel Ridge, at the end of which they make a
23 recommendation, either lockdown hospitalization to continue or
24 not a danger to self, not a danger to --
25      THE COURT:  Whatever it might be.  And then we can

| | |
|---|---|
| 1 | figure -- |
| 2 |     MR. MORRIS:  And then he goes home on conditions of |
| 3 | release that the Court -- |
| 4 |     THE COURT:  Whatever they might be. |
| 5 |     MR. MORRIS:  Now, the other way that can happen is, of |
| 6 | course, the Court can always order the three-day lockdown |
| 7 | observation period that the Texas statute allows.  And we |
| 8 | talked a little bit about that with the AUSA, that if the -- if |
| 9 | the case agent wanted to, the case agent can sign an affidavit |
| 10 | that commits him to a three-day lockdown. |
| 11 | But because the five-day observation period's a little bit |
| 12 | better situation and because he's willing to volunteer for |
| 13 | that -- you volunteer in.  You can't volunteer out, is what we |
| 14 | confirmed.  And I've got the father who can testify.  He went, |
| 15 | spent the time at Laurel Ridge today.  They would tell him |
| 16 | exactly how much time he needs after that, but at least the |
| 17 | initial period is the determination period. |
| 18 |     THE COURT:  And y'all's view may be that he has to be |
| 19 | detained no matter what.  He's a young kid, and undiagnosed |
| 20 | concerns me.  But I'll hear from you certainly about anything |
| 21 | you'd like to say about that, because I've heard it's pretty -- |
| 22 |     MS. THOMPSON:  The videos of the danger to the |
| 23 | community, the mass violence threats -- |
| 24 |     THE COURT:  Yeah. |
| 25 |     MS. THOMPSON:  -- that first got the attention of the |

FBI concern me.

THE COURT: Yeah.

MS. THOMPSON: So I'm not okay releasing him -- here's my bottom line: Sending a 20-year-old kid that's got these issues to GEO is never going to make him better. He definitely needs some intensive psychological help. So I don't object to Laurel Ridge, but I'm not -- I can't let him out of custody for any reason at this point until we're -- until we're satisfied that he doesn't create that imminent danger. I mean, right now there's an imminent --

THE COURT: I have to say, I'm in agreement with this. What I would propose then is getting through the lockdown and evaluation. They should be able to do that. And then bring him back into court, and we'll have a hearing to figure out what we can do at that point. It may or may not be that he can -- of course, they may say that he's got to be committed for a longer period of time. I'll need to work that through with you guys because I also need the competency rulings done here.

MR. MORRIS: Absolutely.

THE COURT: But they -- but Laurel Ridge can usually do that, but there's a lot of complexities here.

MS. THOMPSON: Right. Because if they --

THE COURT: I would like to try to find a way to make it work out if everyone can agree. I'm concerned for the

1  reasons you're concerned.
2          MS. THOMPSON:  Well, if they say -- if they do the
3  evaluation and say, in five days, he's fine to go home, I want
4  a detention hearing.
5          THE COURT:  Yeah.  Well, no.  I --
6          MS. THOMPSON:  And given the stuff that I have -- and
7  we'll share everything we can with Laurel Ridge so they have
8  it.  So I'm assuming they're not going to make that.  The
9  problem is, I get uneasy with the let him out and commit
10 himself to Laurel Ridge.  Now he knows he's going to prison or
11 facing prison time.
12         THE COURT:  Yeah.  Yeah.  Yeah.
13         MS. THOMPSON:  If he was willing to go out in a blaze
14 of glory a few days ago, now would be the time.
15         MR. MORRIS:  Well, and my only concern with that is he
16 knew for at least eight days that his phone and all the
17 evidence and everything the government's looking at, materials
18 was all out there.  He's at home and didn't pick up, didn't
19 leave, didn't go anywhere, didn't try and destroy evidence,
20 didn't do anything, just waited eight days for them to come
21 arrest him.  I don't see this as a flight risk.  I think the
22 biggest concern we all have is, really we --
23         THE COURT:  Whether there's a danger.
24         MR. MORRIS:  -- to look at the mental health issue.
25         THE COURT:  Yeah.  Well, undiagnosed or untreated.

```
 1            MR. MORRIS:  I mean, absolutely it has to be looked
 2   at.
 3            THE COURT:  Okay.  Yeah.  I would -- my great
 4   preference is if y'all could talk through a way of this
 5   transferring thing.  The end game, the after the five days is
 6   easy because I'm just going to set it for a hearing.
 7            MS. THOMPSON:  Right.
 8            THE COURT:  And so whatever happens the end of five
 9   days, he's coming back no matter what it is.  And so then we
10   are all here together and we can make a decision together.
11            MR. MORRIS:  Sure.
12            THE COURT:  This initial transfer stuff, I'm willing
13   to work with y'all on it --
14            MS. THOMPSON:  Yeah.
15            THE COURT:  -- if we can come up with some solution
16   that would work on that.  Let me -- if y'all mind, can I take a
17   short recess, let y'all talk about it?  If we can't get it
18   worked out today, I'm willing to work it out tomorrow.  I would
19   just like to try to get it resolved if we can all agree.  If we
20   can't, we'll go forward with the hearing.
21            MS. THOMPSON:  I think we're kind of on the same page.
22   It's just the details.
23            THE COURT:  I share the concerns about being very
24   controlled until we know what's going on.
25            MR. MORRIS:  Okay.
```

```
 1              THE COURT:  And then we can have an informed decision
 2  from all of us.
 3              MR. MORRIS:  Is there -- and maybe --
 4              THE COURT:  Yeah.
 5              MR. MORRIS:  -- I'm asking of ignorance.  Is there a
 6  mechanism by which the Court is initially saying he's released
 7  to the parents' custody to be immediately transferred to Laurel
 8  Ridge --
 9              THE COURT:  Yeah.  That's -- well, I need to know,
10  does Laurel Ridge have a bed?
11              MR. MORRIS:  They do.
12              THE COURT:  Okay.  And then how do we get him to that
13  bed, the two things I'm concerned about --
14              MR. MORRIS:  So do you want the parents transporting
15  or the marshals?
16              THE COURT:  Okay.  I'll let -- that's why I want to
17  take a break, let y'all talk it through.  If there's a way for
18  the marshals to do it -- usually they don't like doing that.
19  But I'm very -- it has to be controlled, and we have to feel
20  safe.  I would like y'all both to be in agreement.  If we can't
21  reach agreement, then I need to try to figure it out.
22              MS. THOMPSON:  The FBI may be willing to do that.
23              THE COURT:  If they -- Rex is willing to do it or the
24  FBI want to, that'd be fine with me, too.
25              MR. MORRIS:  [Inaudible] maybe pretrial can do that.
```

1  THE COURT:  Yeah, pretrial -- so here come -- speaking
2  of.
3  UNIDENTIFIED SPEAKER:  Speaking of the devil.
4  THE COURT:  There he is.  Okay.  I'm going to take a
5  short recess, let y'all all confer about -- we kind of have a
6  plan, but I'm totally with -- actually, I'm totally with Tracy.
7  We have to have a hearing before I figure out what on earth
8  we're going to do.  I'm concerned.
9  MS. THOMPSON:  Yeah.
10  THE COURT:  This is a case that -- I'll be off duty,
11  but I'm going to keep this one --
12  MR. MORRIS:  Okay.  Thank you.
13  THE COURT:  -- because I've been involved.  I don't --
14  I think it's a mistake to give it to somebody else who
15  [inaudible].  All right.  Very good.
16  MS. THOMPSON:  Thank you.
17  (Open court)
18  THE COURT:  Mr. Bogard, I've just been talking to the
19  attorneys, and the pretrial services officer just got here.
20  I'm going to take a short recess to let them discuss to see if
21  they can present a proposal to me on how to resolve the case
22  for the meantime.  Take a short recess.
23  (Recess at 3:40 p.m. until 3:51 p.m.)
24  THE COURT:  All right.  I took a short recess in
25  Mr. Bogard's case so that the attorneys for each party could

1  consult with the pretrial services officer to see if there's an
2  agreement that could be reached with regard to the
3  circumstances of this case.
4      Let me hear from the parties about that.
5          MR. MORRIS:  Yes, Your Honor.  Mike Morris on behalf
6  of Mr. Bogard.
7      It's clear from conversations with Laurel Ridge that they
8  have bed capacity; that they have the ability to structure a
9  five-day voluntary commitment period for evaluation,
10 determination of dangerousness, determination of self-harm,
11 determination of those things that the Court obviously has
12 concern about when considering a pending decision on bond.
13     The transportation logistics that I think the government
14 has worked out is that the Court would release Mr. Bogard to
15 the custody of the FBI to transport there, and then with the
16 order to return Mr. Bogard to the custody of the FBI upon
17 receipt of information from Laurel Ridge that they're ready to
18 testify regarding the evaluation on safety.
19         THE COURT:  All right.
20         MR. MORRIS:  And that that would happen -- at least
21 preliminarily we're thinking this is a five-day out day and
22 setting.
23         THE COURT: All right.  Let me -- I think I can do
24 that.  Mr. Morris, let me ask you.  I had a -- thought that --
25 were you out of town next week?  Is that --

1       MR. MORRIS: I'll be wherever you need me to be, Your
2  Honor. I don't believe I have a vacation letter for that week.
3  I think in March --
4       THE COURT: Well, I think -- oh, okay. All right.
5  No. Because I thought Kriston had told me that you had tried
6  to move this hearing up because there was a concern you might
7  be out of town. But it might have been another case.
8       MR. MORRIS: It was a conflict that I had with another
9  case that's no longer a conflict.
10      THE COURT: Oh, okay. Got you. All right.
11      MR. MORRIS: We're good to go.
12      THE COURT: Very good. Okay. Great.
13      MR. MORRIS: Thank you.
14      THE COURT: Ms. Thompson, Mr. Morris has indicated
15 what he understands to be a working agreement for the temporary
16 release of Mr. Bogard. You in agreement with this plan?
17      MS. THOMPSON: I am, Your Honor. I just hesitate with
18 the word "release."
19      THE COURT: Yeah.
20      MS. THOMPSON: I know technically the Court has to
21 release him from the marshal's custody.
22      THE COURT: Yes.
23      MS. THOMPSON: But it's the intention that he will go
24 from the marshal's custody into FBI custody for the sole
25 purpose of transportation to Laurel Ridge, where he will be

```
 1  locked down and unable to leave until he is then transported
 2  by -- back into the FBI's custody to be transported back to
 3  GEO.
 4          THE COURT:  Yeah.
 5          MS. THOMPSON:  So I -- that will work.  The FBI has
 6  confirmed that that will work.  And whenever Laurel Ridge is
 7  finished with the evaluation, I will give them -- or I'll give
 8  them the name ahead of time, of the FBI agent.  It'll be
 9  Special Agent Rex Miller --
10          THE COURT:  All right.
11          MS. THOMPSON:  -- that will provide the
12  transportation.  And then we'll have a hearing on the issues of
13  detention at that time.
14          THE COURT:  All right.  Very well.
15      Well, to allay your concerns, which I do share because this
16  is a serious offense and they're circumstances that give me
17  concern, as I understand it, under 18 USC 3142(i), someone who
18  is subject to detention, which Mr. Bogard is until such time as
19  I conclude a hearing in this case, may be released to the
20  custody of -- it says either a U.S. Marshal or another
21  appropriate person for such time as is needed for compelling
22  reason.  I find the evaluation is a compelling reason that
23  would allow me to release Mr. Bogard from marshal custody to
24  the FBI and Laurel Ridge's custody for this -- a lockdown
25  evaluation.  At the -- he would have to remain in their
```

custody. He can't go anywhere else.

And then after that's completed, he could be returned to this Court so we can try to figure out what to do in the case. I think that's provided for by statute. And so that's what I'm going to order. I hope that allays your concerns.

MS. THOMPSON: It does, because under the release conditions under the Adam Walsh Act, he would have to be equipped with --

THE COURT: Yeah. There's all kinds of -- yeah.

MS. THOMPSON: -- an electronic monitor. And I don't know that that's necessary, given he will be -- in effect, he'll be in custody the entire time.

THE COURT: Yeah, yeah. No. This effectively the temporary transfer to custody of another appropriate person, Laurel Ridge facility and Mr. Miller -- Agent Miller -- excuse me.

AGENT MILLER: Yes, sir.

THE COURT: -- until such time as the Court can figure out whether I can set release conditions in the case. We're just not there yet. That's the -- how I'm going to approach it, if that's all right with you.

MS. THOMPSON: And we will provide whatever information we can to Laurel Ridge to help in the evaluation.

THE COURT: All right. All right. And, Mr. Morris, does this sound okay to you? That's how I'm proposing

```
 1  approaching this matter --
 2          MR. MORRIS:  It does.
 3          THE COURT:  -- with the idea that there's going to be
 4  a hearing at the end where everyone has a right to present
 5  evidence before me and testimony as needed to try to figure out
 6  what to do in the case.
 7          MR. MORRIS:  Let's talk about that for one second.
 8          THE COURT:  Sure.
 9          MR. MORRIS:  I need to make sure that my client has
10  the ability to communicate --
11          THE COURT:  Yes.
12          MR. MORRIS:  -- with counselors there --
13          THE COURT:  Yes.
14          MR. MORRIS:  -- without a fear of evidence being
15  created that's incriminating as far as him.  The United States
16  government is going to provide to Laurel Ridge videos and
17  things that they've seen online that cause them concern so that
18  they can have a conversation with my client.
19      My understanding, and based on my conversations with the
20  AUSA, because this is for evaluation of mental health or
21  treatment thereof, that these are not evidentiary matters that
22  can be eventually brought against him for his potential for
23  incriminating evidence.  And I just want to make sure that we
24  have that understanding on the record so that I'm not asking my
25  client to not cooperate with his own evaluation.
```

1        THE COURT:  Let me allay fears on that matter as well.
2        MR. MORRIS:  Thank you, Your Honor.
3        THE COURT:  This is a little bit unusual circumstance.
4   Sometimes, Mr. Bogard, we'll send someone to be evaluated by
5   government officials, usually at the Bureau of Prisons.  That's
6   not what's happening here.  As I understand it from your
7   attorney, this is something that's being provided by your
8   family at their expense.
9        In those circumstances, those people at Laurel Ridge are
10  acting as the agents of your attorney.  All of that is
11  privileged and confidential information until your attorney's
12  ready to disclose it.  I will tell you, he's going to need to
13  disclose to me anything about mental health issues.  If I don't
14  have enough information about that, then I'm going to have to
15  do exactly what I just mentioned, and send you to the Bureau of
16  Prisons to have an evaluation that everyone can talk about.
17       However, to the extent that you're exchanging personal
18  information with them, that's privileged until such time as
19  Mr. Morris releases it.  Mr. Morris is going to have to release
20  as much information as possible, or I'm not going to be able to
21  make a determination as to detention.
22       So it is privileged.  But, Mr. Morris, I think you have
23  control of that.  I will urge you, Mr. Morris, to share as much
24  information.  Just as the government is sharing with you, share
25  everything with them so we can come to a solution here that --

1  if it is possible to come to a solution -- that we can.
2      Ms. Thompson, you may have some concerns.  And I'm happy to
3  hear from you as to those concerns.
4          MS. THOMPSON:  My concern is, unless there's an
5  agreement to share the information, the entire evaluation with
6  pretrial services and the Court, so that the Court can --
7          THE COURT:  Oh, that's -- that's -- I'll allay --
8          MS. THOMPSON:  -- deal with dangerousness, then I'm --
9  why go through it?
10         THE COURT:  I can allay those -- I can allay those
11 concerns as well.  Anything that is disclosed to pretrial
12 services or to the Court as part of the pretrial services
13 evaluation must remain confidential and cannot be used as to
14 guilt or innocence on the case.  So yes, they have to be
15 disclosed to me.
16     I was going a little bit farther than that and saying that,
17 to the extent you can, disclose everything you can to
18 Ms. Thompson as we try to work through some sort of solution
19 here, if possible.
20     I will -- I know, Mr. Bogard, your family is here as well.
21 I will urge your family to cooperate with the pretrial services
22 officer to give them as much information as possible.  Again,
23 the information gathered by the pretrial services officer must
24 remain confidential.  It's only disclosed to me until such time
25 as I disclose it to other [inaudible].  And it cannot be used

1 on guilt or innocence in any case.

2 But it's very important to get all this information out
3 there so we can try to come up with some sort of solution in
4 the case; or if we can't come up with a solution, at least
5 we're making a decision based on the real evidence and not on
6 absence of evidence, which is where we are right now.  I'm
7 trying to get as much information as I can, so I can make the
8 right decision in the case.

9     MR. MORRIS:  Very good.

10     THE COURT:  So that's -- does that -- I think that
11 allays Mr. Morris' concerns.

12     MR. MORRIS:  Yes.

13     THE COURT:  Does that allay your concerns,
14 Ms. Thompson?

15     MS. THOMPSON:  Yes, Your Honor.

16     THE COURT:  This is an unusual circumstance.  I want
17 to make sure we're doing it the right way.

18 All right.  So that's what we're going to do.  Mr. Bogard,
19 you're going to be released as -- with the agreement of the
20 parties, to the custody of Mr. Miller -- or Agent Miller, who's
21 going to take you to Laurel Ridge to get all of your
22 evaluations and work through with the doctors there.  Then
23 you'll come back to court here, and we'll try to figure out
24 what to do.

25 All right.  That concludes this hearing.  We'll be in

1  recess.
2  * * *
3     (End of proceedings at 3:59 p.m.)

1       -oOo-

2    I certify that the foregoing is a correct transcript from

3  the electronic sound recording of the proceedings in the

4  above-entitled matter.

5

6  Date:  3/3/2019

                         /s/ Chris Poage
7                        United States Court Reporter
                         655 East Cesar E. Chavez Blvd., Suite G-65
8                        San Antonio, TX  78206
                         Telephone:  (210) 244-5036
9                        chris_poage@txwd.uscourts.gov